# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

APPROXIMATELY $435,372 IN UNITED STATES      Case Number:    **18-MJ-1285**
CURRENCY FROM ALBERT GOLANT BEING
HELD BY DOMINICAN REPUBLIC AUTHORITIES

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Zachary E. Stegenga, being duly sworn depose and say:

I am a Special Agent with the Internal Revenue Service, Criminal Investigation, and have reason to believe that in the Dominican Republic there is now certain property, namely, approximately $435,372 in United States currency from Albert Golant being held by Dominican Republic authorities, that is: (1) civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and criminally forfeitable under 18 U.S.C. § 982(a)(2) as property constituting, or traceable to, proceeds of bank fraud in violation of 18 U.S.C. § 1344; (2) civilly forfeitable under 18 U.S.C. § 981(a)(1)(A) and criminally forfeitable under 18 U.S.C. § 982(a) as property involved in international money laundering in violation of 18 U.S.C. § 1956(a)(2)(B); and (3) civilly forfeitable under 31 U.S.C. § 5332(c) and criminally forfeitable under 31 U.S.C. § 5332(b) as property involved in, or traceable to funds involved in, bulk cash smuggling in violation of 31 U.S.C. §5332, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

    ✓ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Signature of Affiant
Zachary E. Stegenga, IRS-CI

Sworn to before me, and subscribed in my presence

7/12/18 @ 3:30 p.m.
Date and time issued

at Milwaukee, Wisconsin
City and State

William E. Duffin, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Zachary E. Stegenga, having been duly sworn on oath, state as follows:

## Affiant's Background

1. I am a Special Agent with the Internal Revenue Service, Criminal Investigation. I have been so employed since approximately October 2008. As part of my duties as Internal Revenue Service Special Agent, I investigate criminal violations of the Internal Revenue Code (Title 26, United States Code), the Money Laundering Control Act (Title 18, United States Code), the Bank Secrecy Act (Title 31, United States Code), and other related offenses. Throughout my employment, I have participated in the preparation and execution of multiple federal search and seizure warrants.

2. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts, all of whom I believe to be truthful and reliable.

3. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included each and every fact I know about this investigation in this affidavit.

## Property Sought to be Seized

4. I submit this affidavit in support of an application for a warrant to seize approximately $435,372 in United States currency, which was initially seized by Dominican Republic authorities on July 12, 2017, from Albert Golant, who was then using the alias "Mario Farias Rubio." Dominican Republic authorities are currently in possession of this United States currency. The United States intends to ask Dominican Republic authorities, via a mutual legal assistance treaty (MLAT) request, to turn the seized funds over to United States authorities for forfeiture under United States law. As a part of that MLAT request, the United States intends to include any seizure warrant that this Court might issue in response to this application.

5. Based on the facts and circumstances set forth below, I submit that there exists probable cause to believe that the approximately $435,372 in United States currency, which was initially seized by Dominican Republic authorities on July 12, 2017, from Albert Golant, are:

    a. Funds constituting, or traceable to, proceeds of bank fraud, committed in violation of 18 U.S.C. § 1344, and are therefore:

        i. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C), and

        ii. Subject to criminal forfeiture under 18 U.S.C. § 982(a)(2);

    b. Funds involved in international money laundering, committed in violation of 18 U.S.C. § 1956(a)(2)(B), and are therefore:

       i.      Subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A), and

       ii.     Subject to criminal forfeiture under 18 U.S.C. § 982(a);

  c.    Funds involved in, or traceable to funds involved in, bulk cash smuggling, committed in violation of 31 U.S.C. § 5332, and are therefore:

       i.      Subject to civil forfeiture under 31 U.S.C. § 5332(c), and

       ii.     Subject to criminal forfeiture under 31 U.S.C. § 5332(b); and

  d.    Subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

## Background

6.    Since March 2016, the Milwaukee office of the FBI and IRS have been investigating Albert Golant and his related luxury vehicle exportation businesses: WI Automotive T.R.U.S.T. Lease, Registration, and Consulting, LLC, and DOT Automotive of WI, LLC.

7.    Since 2005, Golant has been involved in the business of purchasing new luxury vehicles and shipping them overseas to individual foreign buyers. These cars are generally shipped to individual buyers in China, Russia, and Africa.

8.    In 2012, Golant was indicted for fraud in the Southern District of New York for absconding with client funds that were supposed to be used to purchase luxury vehicles. Golant gambled the client funds away at casinos throughout the country. Golant pleaded guilty to one count of conspiracy to commit wire fraud and he admitted that he had stolen over $3 million from 14 victims. On January 20, 2016, Golant was sentenced to time served (two weeks) and three years' supervised release.

9.    While on federal supervision, Golant moved to the Eastern District of Wisconsin, where Golant has again engaged in a similar scheme to defraud third parties.

10.    In February 2017, case agents executed a search warrant at Golant's residence and businesses.

11.    On or about May 1, 2017, Golant left the Eastern District of Wisconsin and fled the United States without permission from the Court or the United States Probation Office. Golant's wife subsequently filed a missing person's report with local law enforcement.

12.    On May 15, 2017, a federal arrest warrant was issued for violations of the terms of Golant's supervised release.

13.    On June 12, 2017, a federal arrest warrant for violations of bank fraud and wire fraud was also issued.

14. On June 26, 2018, Golant was indicted in the Eastern District of Wisconsin with seven counts of wire fraud and five counts of bank fraud. The indictment alleges that, as part of his scheme to defraud, Golant obtained funds from third parties by representing that the funds would be used to purchase specific luxury vehicles. The third parties included vehicle brokers, investors, and lenders. Instead, Golant diverted those funds to his own personal use. Golant used the funds to gamble, to pay off gambling debts, to provide funds to professional gamblers to gamble on his behalf, to pay off prior loans, and to satisfy obligations to other clients. On certain occasions, Golant never purchased the specific luxury vehicle and did not return the funds. On other occasions, Golant sold the same luxury vehicle to multiple clients at the same time. On still other occasions, Golant obtained funds from investors, lenders, and clients for the purchase of luxury vehicles that he knew had already been sold and exported. Through his scheme, Golant fraudulently obtained at least $30 million from at least 40 different victims. To date, at least $12 million in losses from victim client companies, investors, and lenders has been identified.

15. The funds sought to be seized – which consist of approximately $435,372 in United States currency – are funds that Albert Golant obtained through a separate bank fraud scheme, committed in violation of 18 U.S.C. § 1344.

16. Through that scheme, Golant defrauded American Express, a financial institution, by using a stolen identity to fraudulently obtain a business credit card account and to make over $1 million in purchases for which he never intended to repay American Express and for which he never did repay American Express.

17. In furtherance of that scheme, which is the scheme at issue in this seizure warrant, Golant sold the merchandise that he had purchased using the American Express credit card for approximately $1 million in United States currency.

18. Golant also smuggled the approximately $1 million in bulk currency out of the United States without declaring it or filing a Currency or Monetary Instruments Report (CMIR).

**Facts Supporting Findings of Probable Cause for Issuance of Seizure Warrant**

19. While Golant was a fugitive, case agents interviewed a witness having the initials D.V., pursuant to a proffer letter.

20. D.V. stated that D.V. had arranged for Golant to flee the United States and to obtain a new identity. D.V. said that on or about May 1, 2017, D.V. and Golant departed Florida on a small sailboat with only themselves and the captain. Before leaving, D.V. destroyed Golant's phone and driver's license. Golant and D.V. sailed for five to six days before they reached the Bahamas. They did not pass through customs in the United States or the Bahamas so there are no records of their departure or arrival.

21. Golant traveled with a suitcase filled with approximately $1 million in United States currency.

3

22. Golant did not file a CMIR to declare the approximately $1 million that he took out of the country.

23. D.V. further stated that during summer 2017, D.V., Golant – using a false identity and fake Brazilian passport – and a woman flew from the Bahamas to the Dominican Republic with over $430,000 in cash and four to five luxury watches. When they arrived, Dominican Republic authorities seized all of the cash and watches. After the items were seized by Dominican Republic officials, Golant obtained a lawyer and, using Golant's fraudulent identity, attempted to recover the seized items. The Dominican Republic returned the watches to Golant, but not the cash.

24. There is no U.S. Customs and Border Protection record of Albert Golant or D.V. leaving the United States on or about May 1, 2017; however, there is a U.S. Customs and Border Protection record of D.V. traveling from the Bahamas to Ft. Lauderdale, Florida on May 9, 2017, on a small commercial plane.

25. In April 2018, Golant, through his attorney, contacted a case agent on the Golant criminal investigation and advised that he wanted to self-surrender and return to the United States.

26. On May 15, 2018, case agents traveled to Dominican Republic to meet with Golant and to escort him to the United States. Golant voluntarily turned over his cell phone to case agents and signed a consent to a search of the phone.

27. A review of the files on this cell phone show that Albert Golant – using the fictitious name Mario Farias Rubio – D.V. and woman having the initials X.G.S. arrived at the airport, Aeropuerto Internacional Gregorio Luperon, in Puerto Plata, Dominican Republic, on July 12, 2017. The records show that they arrived in the Dominican Republic on July 12, 2017, with $435,372 in United States currency and that Dominican Republic authorities then seized those funds.

28. On May 16, 2018, Golant was escorted by case agents from the Dominican Republic to the United States, where Golant was arrested in Miami, Florida.

29. Golant was interviewed by case agents, with the consent of his attorney, regarding the funds seized in the Dominican Republic.

30. Golant admitted that the funds seized by the Dominican Republic customs officials were funds that Golant had obtained before he fled the United States in May 2017. Galant further admitted that he had obtained the seized funds by using his American Express credit card. Specifically, Golant admitted that he had purchased approximately $1 million of high-end merchandise, such as watches, that he then sold that merchandise for United States currency. Golant admitted that he then took that United States currency to the Bahamas, where he used the funds to pay for living expenses and to gamble while living in the Bahamas.

31. American Express Plum Card business credit account ending in 1004 was opened in July 2016, in the names of DOT Automotive of WI and an individual having the initials "L.G.," who is Albert Golant's mother. The billing address on the account was Albert Golant's residence

4

located at 1XX Legend Way, Wales, Wisconsin. Multiple employee credit cards were issued under this account, including a credit card ending in 2010 in the name of Albert Golant.

32. Between July 2016 and February 2017, many charges were made to the credit cards under American Express Plum Card business credit account ending in 1004. During the same time period, regular payments were made to this account using funds from bank accounts controlled by Albert Golant.

33. Between March 19, 2017 and April 28, 2017, employee credit card ending in 2010 in the name of Albert Golant was used to make 22 purchases at luxury jewelry stores totaling $819,291.92. For example, on April 26, 2017, employee credit card ending in 2010 was used to make two purchases in the amounts of $90,000 and $36,700 at Schwanke-Kasten Jewelers in Whitefish Bay, Wisconsin. The 22 purchases were a significant increase in activity on the account from previous periods. During the same time period, only $94,000 of payments were made to the account, and payments ceased after April 2017.

34. Notably, the two jewelry purchases on April 26, 2017, in Whitefish Bay were made after all payments to the credit card account ceased.

35. As a result of Golant's use of the American Express card to make these purchases, for which he did not intend to repay American Express and for which he then did not repay American Express, American Express Bank, FSB, the financial institution that issued the American Express card lost over $1 million. At all times material, the deposits of American Express Bank, FSB, were insured by the federal government through the Federal Deposit Insurance Corporation ("FDIC").

36. On April 17, 2018, case agents interviewed L.G. regarding American Express Plum Card business credit account ending in 1004. L.G. told case agents that she did not apply for this credit account or any of the employee credit cards opened under the account. L.G. also told case agents that any American Express accounts opened in her name were fraudulently opened without her knowledge or consent. L.G. said the email address of agXXXXX@yahoo.com, which was listed on the application for the account ending in 1004, is Albert Golant's email address.

37. I submit that the evidence recounted above shows that Golant engaged in international money laundering in that he transported the approximately $1 million in currency from the United States to the Bahamas, while knowing that the currency consisted of proceeds of his scheme to defraud the issuer of the American Express card, for the purpose of concealing, among other things, the location of those proceeds, and for the purpose of avoiding the CMIR requirement, in violation of 18 U.S.C. § 1956(a)(2)(B).

38. I further submit that the evidence recounted above shows that Golant knowingly concealed the approximately $1 million that he carried from the United States to the Bahamas, by boat, for the purpose of evading the CMIR requirement, and that he therefore also engaged in bulk cash smuggling, in violation of 31 U.S.C. § 5332.

5

## Conclusion

39. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that the approximately $435,372 in United States currency, which was seized by Dominican Republic authorities on July 12, 2017, from Albert Golant, then using the alias "Mario Farias Rubio," are:

    a. Funds constituting, or traceable to, proceeds of bank fraud, committed in violation of 18 U.S.C. § 1344, and are therefore:

        i. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C), and

        ii. Subject to criminal forfeiture under 18 U.S.C. § 982(a)(2);

    b. Funds involved in international money laundering, committed in violation of 18 U.S.C. § 1956(a)(2)(B), and are therefore:

        i. Subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A), and

        ii. Subject to criminal forfeiture under 18 U.S.C. § 982(a);

    c. Funds involved in, or traceable to funds involved in, bulk cash smuggling, committed in violation of 31 U.S.C. §5332, and are therefore:

        i. Subject to civil forfeiture under 31 U.S.C. § 5332(c), and

        ii. Subject to criminal forfeiture under 31 U.S.C. § 5332(b); and

    d. Subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

### # # #